**UNITED STATES of America, Appellant,**

v.

**Jerry PRUSAN and David Vives, Defendants–Appellees.**

**No. 1404, Docket 92–1020.**

United States Court of Appeals, Second Circuit.

Argued May 1, 1992.

Decided June 12, 1992.

trict Court for the Southern District of New York, Sand, *J.*, 780 F.Supp. 1431, dismissing one count of an indictment against the defendants on the ground that the Double Jeopardy Clause of the Fifth Amendment barred prosecution of that count. Because the offense charged in that count is not the same offense with which the defendants previously were charged and to which they pleaded guilty, we reverse the judgment of the district court and remand the matter to the district court.

## BACKGROUND

As a result of an investigation into the illegal interstate shipment of firearms, the defendants in this case, Jerry Prusan and David Vives, were indicted both in the District of Puerto Rico and in the Southern District of New York. The Puerto Rico indictment, dated April 10, 1991, alleged in Count One that Prusan and Vives conspired with others to ship firearms, ammunition and silencers in interstate commerce from New York to Puerto Rico in violation of 18 U.S.C. § 922(a)(1). That count alleged over twenty overt acts taken in furtherance of the conspiracy and included allegations concerning specific firearms. The Puerto Rico indictment also alleged in several counts substantive violations by Prusan and Vives of various firearms statutes, including 18 U.S.C. § 922(a)(1)(A), (a)(3) & (a)(5).

Bruce G. Ohr, Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty. and Annmarie Levins, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellant.

Joseph Calluori, New York City (Paul W. Bergrin, Pope and Bergrin, Newark, N.J. and Lawrence F. Ruggiero, New York City, of counsel), for defendants-appellees.

Before: MESKILL and NEWMAN, Circuit Judges, and ARCARA,* District Judge.

MESKILL, Circuit Judge:

This is an appeal by the government from a decision of the United States Dis-

On May 31, 1991 Prusan and Vives were indicted in the Southern District of New York. Count One of that indictment, which is the only count with which we are concerned on this appeal, alleged a conspiracy between Prusan, Vives and others to transport firearms purchased or obtained by them outside the state of their residence, New York, into that state in violation of 18 U.S.C. § 922(a)(3). The indictment alleged three overt acts taken in furtherance of the conspiracy. Two of those acts involved buying firearms in Florida and sending them to New York.

* Honorable Richard J. Arcara, United States District Judge for the Western District of New York, sitting by designation.

Prusan and Vives both pleaded guilty to certain counts of the Puerto Rico indictment, including the conspiracy count and various substantive counts. The government provided Prusan and Vives with Firearms Transaction Records that indicate that several of the firearms that were the subject of the substantive Puerto Rico counts to which both men pleaded guilty were initially purchased in Florida by Vives.

On September 6, 1991, after both men had pled guilty in Puerto Rico, the United States Attorney's Office filed a superseding indictment in the Southern District of New York. The superseding indictment changed Count One of the original indictment from a conspiracy to violate 18 U.S.C. § 922(a)(3) to a substantive violation of that statute. Count One of the superseding indictment no longer alleged specific acts in violation of section 922(a)(3) but merely alleged that between February 1, 1991 and April 1, 1991 Prusan and Vives willfully transported firearms obtained outside their state of residence into that state.

Prusan and Vives moved to dismiss Count One of the instant indictment on the grounds that it constituted the same offense for which they had been prosecuted and convicted in Puerto Rico and thus could not be maintained consistent with the Double Jeopardy Clause of the Fifth Amendment. The district court applied the double jeopardy analysis set forth by the Supreme Court in *Grady v. Corbin*, 495 U.S. 508, 521, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990). Examining both the overt acts alleged in the Puerto Rico conspiracy count and the substantive firearms offenses to which Prusan and Vives had pled guilty, the district court held that "to establish an essential element of the offense alleged in Count One, the purchase of firearms outside New York, the Government will attempt to prove conduct that constitutes offenses for which the defendants have already been prosecuted." The district court therefore granted the motion to dismiss that count. The government appeals this decision pursuant to 18 U.S.C. § 3731.

## DISCUSSION

The Fifth Amendment provides that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb." After the district court's decision but prior to oral argument of this appeal, the Supreme Court announced its decision in *United States v. Felix*, — U.S. —, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). That decision altered the way in which some aspects of *Grady* had been understood in this Circuit. *See United States v. Calderone*, 917 F.2d 717 (2d Cir.1990), *vacated*, — U.S. —, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992) (in light of *Felix*). Although the district court did not have the benefit of the *Felix* decision, our task is to evaluate, under the current understanding of the Double Jeopardy Clause, the propriety of the proposed prosecution in light of the defendants' prior guilty pleas in Puerto Rico. *See Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.").

In *Felix*, the Supreme Court examined the Double Jeopardy Clause in relation to the prosecution of the defendant, Felix, for two crimes arising out of the same type of conduct and for which the government utilized similar evidence at the two trials. Felix was convicted in Missouri federal court on a substantive count of attempting to manufacture methamphetamine in violation of federal law. In order to counter Felix's assertion that he had no criminal intent with respect to his shipment of precursor chemicals to Missouri, the government introduced evidence at the Missouri trial tending to show that Felix had manufactured and distributed methamphetamine several months earlier in Oklahoma. *See* 112 S.Ct. at 1380.

After Felix was convicted in Missouri, the government indicted him in the Eastern District of Oklahoma, alleging among other things that Felix and others had conspired

to manufacture, possess and distribute methamphetamine. Two of the nine overt acts alleged to have been taken by Felix in furtherance of the Oklahoma conspiracy were based on conduct that had been the subject of the Missouri prosecution. *See id.* None of the substantive counts alleged in the Oklahoma indictment involved conduct prosecuted in the Missouri prosecution.

The Supreme Court held that the Oklahoma prosecution did not violate the Double Jeopardy Clause. *See id.* at 1381. The *Felix* Court first held that the mere fact that evidence of the Oklahoma drug activity had been introduced at the Missouri trial to demonstrate intent did not mean that Felix had been prosecuted for that conduct. The Court stated that "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *Id.* at 1383 (footnote omitted). Thus, the substantive counts in the Oklahoma prosecution were not barred by the Double Jeopardy Clause.

The Court next addressed whether the Oklahoma conspiracy count, which alleged as two overt acts in furtherance of the conspiracy conduct which had been the basis of the Missouri prosecution, could be prosecuted consistent with the Double Jeopardy Clause. *See id.* The Court held that it could, reiterating the established "rule that a substantive crime, and a conspiracy to commit that crime, are not the 'same offense' for double jeopardy purposes." *Id.* at 1384.

In this case, the district court relied in part on the factual overlap between the Puerto Rico conspiracy offense and the New York substantive offense in holding that the instant indictment was barred by the Double Jeopardy Clause. Under *Felix*, such overlap does not present a double jeopardy problem.

However, the district court also relied on several of the substantive counts in the Puerto Rico indictment in concluding that the New York prosecution was barred by the Double Jeopardy Clause. Although the district court acknowledged that it was "conceivable that [Count One of the New

York indictment] involved conduct unrelated to that prosecuted in the Puerto Rico indictment," the evidence before the district court tended to demonstrate that the conduct would be related. As the government does not contend otherwise, we will assume that the conduct charged in the instant indictment is not unrelated to the conduct underlying the Puerto Rico prosecution.

Therefore, the question is whether, where an individual buys firearms in Florida and ships those firearms to the state of that individual's residence and then from that state of residence ships the firearms to another part of the country, the government, consistent with the Double Jeopardy Clause, may prosecute that individual separately for each leg of the journey. Prusan and Vives argue, in effect, that they were involved in only one course of conduct, transporting firearms to Puerto Rico. That the firearms incidentally were shipped first to New York, the state of their residence, should not, they argue, allow the government to bring two separate prosecutions for the same conduct. As *Felix* does not readily provide an answer to this question, we must address ourselves to pre-*Felix* interpretations of the Double Jeopardy Clause.

Defendants' argument is reminiscent of the "single transaction" test for double jeopardy, a test that the Supreme Court has refused to adopt. Justice Brennan proposed in a concurring opinion in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), joined by Justices Douglas and Marshall, that "the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." *Id.* at 453–54, 90 S.Ct. at 1199 (footnote omitted); *see also Jones v. Thomas,* 491 U.S. 376, 387–88, 109 S.Ct. 2522, 2528, 105 L.Ed.2d 322 (1989) (Brennan, *J.*, dissenting). Under this "single transaction" test the prosecution of Prusan and Vives for the first part of a transaction, the ultimate goal of which was to send firearms to

Puerto Rico, might well be barred by the Double Jeopardy Clause. However, the Supreme Court has "steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause." *Garrett v. United States,* 471 U.S. 773, 790, 105 S.Ct. 2407, 2417, 85 L.Ed.2d 764 (1985).

Instead, this case is governed by the general principle set forth in *Grady,* 495 U.S. at 521, 110 S.Ct. at 2093. In that case, which *Felix* did not purport to overrule, the Supreme Court held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* (footnote omitted). In *Grady,* the defendant, Corbin, had driven his automobile across the median strip of a road while intoxicated and struck another car, killing the driver and injuring a passenger. The state charged Corbin with the misdemeanors of driving while intoxicated and failing to keep to the right of the median. After Corbin pleaded guilty to those charges, the state brought felony homicide and assault charges against him. The Supreme Court held that those charges were barred by the Double Jeopardy Clause because the state intended to establish an essential element of those charges—recklessness—by proving "the entirety of the conduct for which Corbin was convicted." *Id.* at 523, 110 S.Ct. at 2084. The *Grady* Court noted that the state would not be barred from bringing a subsequent homicide prosecution if it were to rely on conduct for which Corbin had not already been convicted to establish all the essential elements of the offense. *Id.*

This case differs significantly from *Grady.* Count One of the instant indictment charges Prusan and Vives with substantive violations of 18 U.S.C. § 922(a)(3). That statute renders it unlawful "for any person [without a license] ... to transport into or receive in the State where he resides ... any fire arm purchased or otherwise obtained by such person outside that State." In order to prove that Prusan and Vives violated this statute, therefore, the govern-

ment must demonstrate that they (1) purchased or obtained a firearm outside New York, their state of residence, (2) transported that firearm into New York, and (3) were unlicensed. 18 U.S.C. § 922(a)(3).

Prusan and Vives also both pleaded guilty to substantive firearms counts in the Puerto Rico indictment that alleged violations of 18 U.S.C. § 922(a)(1)(A), (a)(5). Section 922(a)(1)(A) proscribes any unlicensed person from engaging in the business of shipping or receiving firearms in interstate commerce. The indictment makes clear that the interstate commerce element of the offenses charged under this section was to have been satisfied by the movement of the firearms from New York to Puerto Rico. Section 922(a)(5) prohibits unlicensed persons from transferring firearms to one whom he knows or has reason to know resides in a state other than that in which the transferor resides. Even assuming that the same firearms are involved and that their route through New York was merely incidental to their shipment to Puerto Rico, neither of these statutes describes conduct that will be used to establish an essential element of the alleged violations of section 922(a)(3) set forth in Count One of the instant indictment.

Prusan pleaded guilty to one count of aiding and abetting an individual not charged in the indictment with violating section 922(a)(3). As noted above, section 922(a)(3) prohibits an individual from receiving in the state where he resides any firearm purchased or obtained outside that state. Thus, in order to prove that count of the Puerto Rico indictment, the government would have had to show that Prusan aided and abetted a resident of Puerto Rico in obtaining the firearm outside of Puerto Rico and bringing that firearm into Puerto Rico. In order to prove Count One of the present indictment, the government would have to show only that Prusan obtained the firearm outside of New York and brought or received it in New York. There is not even substantial overlap in the elements of the two offenses.

Proof that Prusan and Vives shipped firearms to Puerto Rico from outside of

Puerto Rico, transferred firearms to a person living outside their home state of New York, or aided and abetted a Puerto Rican in obtaining a weapon outside Puerto Rico and bringing it into Puerto Rico will not establish an essential element of the crime charged in the New York indictment—acquiring firearms outside New York and bringing them into New York. Count One of the instant indictment therefore does not rely on conduct that constitutes an offense for which the defendants have already been convicted in the Puerto Rico indictment to establish an essential element of the offense. The Double Jeopardy Clause does not bar this prosecution.

## CONCLUSION

Although the charge at issue here may be related to the conduct that formed the basis of the charges to which the defendants pleaded guilty in Puerto Rico, this prosecution is not barred by the Double Jeopardy Clause. Any overlap in the conduct charged in the Puerto Rico conspiracy charge is irrelevant here because, for purposes of double jeopardy, a conspiracy to commit a crime is separate from the crime itself. Nor does the present indictment rely on the same conduct as the substantive counts in the Puerto Rico indictment. The present prosecution will not rely on the conduct that constitutes the offense to which the defendants pleaded guilty in Puerto Rico to establish an essential element of the offense charged. The judgment of the district court is reversed and the matter is remanded for further proceedings not inconsistent with this opinion.

JON O. NEWMAN, Circuit Judge, dissenting:

Jerry Prusan and David Vives bought some guns in Florida and sold them to customers in Puerto Rico. They transported the guns from Florida to New York and then from New York to Puerto Rico. The Government prosecuted them in the District of Puerto Rico and obtained convictions on a variety of charges arising out of these transactions. The Puerto Rico charges include conspiracy to ship guns from New York to Puerto Rico and the substantive offenses of being in the business of dealing in guns without a license and shipping guns from New York to Puerto Rico. 18 U.S.C. §§ 371, 922(a)(1)(A), 924(a)(1)(D) (1988). Apparently not satisfied with the sentences imposed by the District Court in Puerto Rico, the Government is now proceeding to try Prusan and Vives on a charge of bringing the same guns from Florida to New York. I respectfully dissent from the Court's judgment permitting the Government to break the Florida–Puerto Rico shipment of these guns into two sets of offenses, one for each leg of the journey.

In reversing Judge Sand's dismissal of the count purporting to charge the defendants with the "separate" offense of transporting guns into their state of residence, New York, in violation of 18 U.S.C. § 922(a)(3) (1988), the Court carefully analyzes the Supreme Court's opinion in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and concludes that the Government is not endeavoring "to prove conduct that constitutes offenses for which the defendants have already been prosecuted." *Id.* at 521, 110 S.Ct. at 2093. Whether or not the second prosecution violates the double jeopardy protection outlined in *Grady v. Corbin*, it offends the more elementary rule that the Government may not fragment an offense into units smaller than the "allowable unit of prosecution," *see United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952), that Congress has identified in defining the offense. *See Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (unit of offense for Mann Act is the interstate journey, not each woman transported). "[C]ontinuation of a transportation ... could not properly be charged as a separate crime since this would permit fragmentation of one continuous transportation into several segments, opening the door to mischievous abuse of the statute [punishing interstate transportation of stolen property, 18 U.S.C. § 2314 (1988)]." *United States v. Johnpoll*, 739 F.2d 702, 715 (2d Cir.), *cert. de-*

*nied,* 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984).

The Government argues that "[s]hipping weapons from Florida to New York clearly is distinct from the conduct of shipping weapons from New York to Puerto Rico, even if both acts represent different acts in furtherance of the same scheme." Brief for Appellant at 8. How far down that road would the Government go? If the guns are transported on the first leg of the journey by car, is it a separate offense as the guns move between each pair of adjacent states between Florida and New York? Even the Government hesitated at oral argument to endorse fragmentation of the offense to that degree. I would not permit the Government to divide the journey into even two legs, just because the second leg is over water. "One if by land, two if by sea" is best left as a signal to patriots; it is not an acceptable method of counting crimes.

"Unit of offense" analysis is not precluded in this case simply because the second prosecution charges the defendants with the first leg of the gun shipment under section 922(a)(3), which punishes transportation into the state of one's residence. Had the Government first prosecuted the defendants for shipping the guns from Florida to New York in violation of section 922(a)(1)(A), punishing interstate transportation, it could not have brought a second prosecution for shipping the same guns into New York in violation of section 922(a)(3), because the (a)(1)(A) offense would have been a lesser included offense within the (a)(3) offense. The Government should not be permitted to circumvent that outcome by prosecuting first for the second leg of the journey (from New York to Puerto Rico) and now prosecuting for the first leg (from Florida to New York).

Even if this fragmented prosecution is lawful—a result the Court sustains on the basis of the indictment, but a result that may well be viewed differently on the basis of a complete trial record—it is an undue imposition upon an already overburdened District Court. In any event, this second prosecution is a pointless maneuver that may succeed in increasing the number of notches in the prosecutor's belt and the number of convictions on the defendants' records, but it is not likely to result in any increased punishment. *See* U.S.S.G. § 5G1.3(b) (requiring multiple-count analysis for sentencing of defendant subject to undischarged term of imprisonment imposed under Sentencing Reform Act). I would affirm the order of the District Court.